First of all, Your Honor, I'd like to indicate that the record is clear that neither the plaintiff nor the defendant, Defense Counsel, had caused any delays in this matter. This matter had been pending for over two years and had been transferred between a various number of judges, which was part of the problem. In one case, it took 15 months to get a ruling on a motion, so no delays were caused by either side. So the comments in the various orders by Judge Walters was incorrect that there were any delays by either party. Let me ask you a few questions. Sure. Okay, so as I understand it, and you can correct me if I'm wrong, as I understand it, once the case got to Judge Walters, he decided he was going to hold a status conference, and he asked his clerk, his deputy clerk, to call your office and see if you were available on such and such a date, and apparently she didn't reach you. No, she did not. So she sent out a notice, or the judge ordered a notice be sent out that required you to appear in court nine days later. Is that correct? Eight days. Eight days later. Now, as I read the judge's frequently asked questions, he suggests several options to counsel how he likes things done. And pertinent here are his answers to questions number six and nine, which are posted on the court's website. One is to request a continuance, you submit a stipulation or ex parte application one week before the date. Number nine is if you have a calendar conflict, you should notify the deputy courtroom clerk in writing at least one week prior to the hearing date. And I gather when you looked at this, and this is what I don't quite understand, is you opted for one rather than the other, and why is that? Well, because I'm not sure they're not in conflict. They're rather ambiguous. Do you have to do both or one or the other? Calendar conflicts, obviously the court, I did not get the message regarding the conflict, I'm sorry, regarding the fact that he was setting a status conference. We had had a number of status conferences because we had probably been transferred about three or four times, and we had filed a status report with Consuelo Marshall, who was the chief judge in central district, of course, and it couldn't have been done on the telephone. But I sent, it says calendar, it doesn't say either or, obviously, but I figured that calendar conflicts. I wasn't necessarily asking for a continuance, but perhaps later in the day, because I had three matters in the morning that couldn't possibly be continued. They were hearings that were extremely important. I had to be there. I couldn't give it to somebody else. So I asked for that. Those conflicts were not in the central district of California. They were with? They were in Indio, California. State court matters. State court, that's correct. Three matters, which could not be continued either because they'd been continued many times. But the reason those were set, those had been set for quite a long period of time before I got the notice eight days later that there was going to be a status conference. I immediately called the court, and then I immediately prepared a declaration. Apparently, the declaration that was sent to them indicating the conflict and asking the court to do something, contact me, whatever, was returned because they felt that it should have been filed in the eastern district when it had already been transferred to the western district. It didn't get back to me until the 6th because the 5th happened to be a religious holiday. If I had been in the office on the 5th, I would have gotten it, and I would have immediately contacted the court and even messengered it down there. Unfortunately, I again overnighted it on the 6th, and, of course, it got there on the 7th the day later. But more importantly, Your Honor, there's an issue as to whether or not we look at the order of dismissal, which was the first order that the judge made in the minute order, the very first one, where he said that a separate order will follow, or the December 19, 2005, which was the judgment of dismissal post-denial of the motion to vacate. Now, I have to indicate to you, if you look at the order, the minute order that was prepared by His Honor for the October 6th, where he dismissed it without prejudice for failing to appear at the ‑‑ there's no indication there's any notice of entry of this order. Well, it's stamped, you know, from my experience down at the district court, it's marked entered on CM October 11th. It has the clerk's signature, and then it has JS6. That means that that document was used to terminate the case. Well, but if you look at the order of December 16th, it's very clear. It says entered, there's a date entered, and then on the left it says this constitutes notice of entry as required by Federal Rule of Civil Procedure 77D. I understood that to be with respect to the motion. That's right. But it should have also been on the order of dismissal. The original order to let one know that you have to ‑‑ It's pretty clear from this order. You know, it's always problematical when the district courts use the minute orders as a document for a separate judgment. They should always enter a judgment that says judgment. But our case law seems to suggest that this type of minute order, which says at the bottom it is so ordered, it is entered on the docket, and it says there's no doubt here that he dismissed the case. No, I understand. But he also ‑‑ it's the same order as the ‑‑ basically it's the same form of the order as December 16th, 2005, so there's no reason. I mean, if you're expecting to indicate there's a notice of entry, there is none. Why would they stamp one and not the other? There appears to be that it perhaps was not entered. He basically repeated the order. He ordered just in that motion. Yeah, but if you'd filed a notice of appeal within 30 days after this order on the 6th of October. That's right. And then still filed your motion, I think you would have a better argument. No, I understand. I mean, if this were being tested under 41B for failure to comply with the order, I think, you know, I don't think there would be any question here. But we're stuck with the rule 60B, which is, you know, it's abuse of discretion and we look at the equitable factors and whatnot. I understand. So the reason why you brought a 60B application, I take it, was to give the district court judge an opportunity to reconsider, and unwittingly you put yourself into a different burden of persuasion? I guess I did, but I thought that since the order of October 6th was rather short and brief, to say the least, and didn't really set out the specific reasons, I figured that we would give it a shot and that it would be clear that there was no intent to violate a court order of that nature. Can you clarify this? Because I'm not really familiar with the eastern and the western district of California. I'm sure I'll become familiar shortly. But these are far removed from each other? Yes. Well, the eastern district is Riverside County. It's a division. Yes. The division of eastern is Riverside County. It's all part of the central district, and basically Los Angeles is the central district a little beyond that. But it's far away. So what happened here? Did you send your application to the western district, but you were told to send it to the eastern district? I'm a little confused about how you rolled that out. No. The case had already been transferred to the eastern division. Right. I'm sorry, back to the western division. Back to the western. It originally was assigned to the western division. When we filed a notice of related cases, there's two other cases that were related. It was then transferred to the eastern division. Then Judge Timlin retired, and it was assigned back to the western division. All right. Now, when it was assigned back to the western division, I received a notice saying file all documents in the western division, no longer in the eastern division. And that's what you did? So that's what I did. I sent it to ñ and that got there on the 30th of September, which was way before October 6th, obviously. It's not half a day after that again. I didn't get it back until the 6th of October, which is the day set, and I found out that it had been rejected because apparently they sent it to the wrong ñ they said this should have been filed in the western district. Well, didn't you send it to the western district? I sent it downtown Los Angeles to the eastern district. Eastern district. I'm sorry, the western district. You did send it. I know. You sent it to the western division. Yes, I did. I sent it to the western division, and they returned it because they said it should have been filed in the eastern division, apparently not realizing that it had already been transferred back to the western division. So it was timely filed initially in the western district. Yes, I did. But somehow it went down to the eastern district, and that's what created this problem. That's correct. I didn't get it until the 6th, and unfortunately, like I say, I would have gotten it on the 5th, and I could have taken care of it. I would have hand-carried it down there if necessary. But it was a religious holiday, and I do not work on ñ it was a very religious holiday, and I did not ñ I was not at the office on that day. What should be the result in your view? Well, I don't think the ñ as this past year recognizes, we're going to have to decide on the record. I understand, and I think that it should be set aside. If he wanted to impose some type of another sanction, but they think to dismiss it basically and totally dismiss the case, even though it's without prejudice, the statute had long run, so there was no way to reactivate the case. I mean, I couldn't turn around and refile it because the delay had been so ñ I mean, it had been delayed over two years just in motions. We were on the last motion, which has been vacated by Judge Timlin, because he was retiring and the case was being transferred. So he took that case off calendar. And then, to make matters worse, not doing it off calendar, they deleted it from the docket, so that it didn't even exist. They had to reactivate it, which, of course, would have occurred. But he decided ñ Judge Walters decided it was moot. I just think that the sanction was way beyond what ñ I mean, there was no phone call to me or anything, or even notice that he file an OSC written possible dismissal. Does it pose any difficulty to us, as we review the case, that this case is as old as it is and that the court was apparently trying to bring the case to a close and counsel, so far as this record might appear, was not particularly interested in doing so? Well, I don't think that's the case, Your Honor. If you look at the docket, you'll see that that's not the case at all. I think that you'll see, in fact, 15 of the approximately 22 months that the case had been pending at the time was as a result of the district court judge not making a ruling on one of the motions. It was at the motion stage still. It's ñ these are hotly contested issues in this case. Judge Tillman ultimately dismissed the original complaint and gave leave to file the second one. Only partially. But you filed the first amended complaint. First amended. And then there was a challenge to that. And I filed a second amended, which cured the defects. There was only one defect, which he indicated, and that was corrected. And I believe that the other judges have heard the same motions, and I believe that it would have been overruled because, in fact, Judge Tillman had only narrowed in on one little defect. But there was a motion filed, another motion to dismiss that second amended complaint. He had already filed it. That's what got vacated. That was the one that got lost. Right. That's correct. Right. Okay. So there's nothing you did that delayed the prosecution of this litigation, I take it? Not one. And I have to say the defense did not either. Neither one of us. We did what we had to do in terms of ñ they had a right to file motions. I filed opposition in a timely manner. We made all appearances. That was the only appearance either one of us ever missed, period. And I just think that it's ñ I think the plaintiff should have a right to have a trial on the merits. You're over your time, and I'll give you a minute in rebuttal. Thank you. Let's hear from the other side. Good morning, Your Honors. Bruce Diesenhaus on behalf of the appellees. I'm not sure I can really add to what took place here. I think the issues are fairly clear. I think Judge Walter's standing order was clear. I understand ñ You'd be up in arms, wouldn't you, if a lawyer sent you a notice for six days? An eight-days notice, you've got to be in court? I'm not going to suggest that the result wasn't a harsh one. It was. And ñ but the order was clear. I had to clear my calendar to attend on short notice. I just think it's amazing that, you know, here's the federal court. I mean, there's no respect for, at least from my perspective, of the fact that lawyers might have other conflicting matters in state court. Well, I ñ They're just as important. They're just as important to the state court, judges. I can't disagree, Your Honor. It certainly was set up very quickly. I realize Judge Walter had just become a federal judge. This was one of the first cases transferred to his docket. And I suspect that perhaps he was trying to make a point. Well, let's look at his summary decision in respect to the application of the pioneer factors. It seems that it's conclusory to me. The judge says, examining the four pioneer factors, the court finds that Mr. Rasch made an intentional and deliberate decision not to appear. Do you believe that to be the case, based upon what we just heard from Mr. Rasch and the record in this case? Well, I think it was intentional in the sense that he had an appearance that had been duly noticed, albeit on short notice, to be in front of Judge Walter. In the sense that he made a deliberate choice to take his Indio appearances, yes. Now, do I ascribe some moral blame to Mr. Rasch for making the choice that he did? No. Well, now the judge says that the failure to appear was in bad faith. Where, pray tell, do you find bad faith? There seems to be a lot of circumstances here, back and forth, sending things to the wrong district, and we heard all these stories. Where's bad faith? I think the bad faith, at least in Judge Walter's mind, is that – I'm not talking about Judge Walter's mind. I'm talking about where you think there's bad faith here. The only bad faith I can see, Your Honor, is that if it is clear that you have a scheduled appearance in front of a Federal judge and he gives you two methodologies to get it continued, and you don't avail yourself of either one, and you assume it's been taken care of, the assumption that it's been taken care of is what could lead a Federal judge to conclude that you've been acting in bad faith. Now, you know, these are conclusory statements. I don't see any particular findings here. You tried to now embellish the decision by explaining what you believe is bad faith, but I don't see any facts here that really suggest that there was any bad faith at all. In fact, I think there was good faith, but unfortunately, you know, these things happen. How about the next pioneer factor, the failure to appear was prejudicial to opposing counsel. How is it prejudicial to you? You had to go from your office to the court and spend an hour or two in court? That's the only prejudice I can think of. The case had been languishing for years as it was. Nobody's fault, though, but couldn't that type of prejudice, because I have situations where for one reason counsel doesn't appear, and based upon the situation, we can require counsel to compensate the other attorney. These are all, you know, good lawyers, officers of the court working together. There it is. Any prejudice other than that couldn't have been cured by paying for the time that  I can't disagree with that, Your Honor. I agree. What do we ask ourselves as we review it, though? We don't ask ourselves would we do the same thing. That's not the test, is it? No. So what do we do? We have to look at the record to see if there's any basis for what the trial court did, don't we? Correct. You have to follow. And if we look, what will we see? We'll see a case that's been languishing for four years. Now, let's say it's nobody's fault. That's what your opponent says. But it's been languishing for four years. Finally, a judge gets here and says, we're going to bring this matter to an end. And he sets forces in motion to bring it to an end. Yes. And both counsel are fully advised of the forces that he set in motion. And one said, I have a problem. I have a conflict. I have this. And the judge says, fine. Here are two alternatives. Use one of these two to resolve your conflict. And the lawyer says, I think I've got another idea. Now, let's assume he's not acting in bad faith, but he's not following through with one of the two ideas that the court gave him. But it comes to us on appeal. What do we do when we look at it? We have to decide it on the record. We see a case that's been languishing for four years. We see that it's not been brought. Now, let's say it's all a judge's fault. I've never seen a case when I was a lawyer that the judge was completely in charge of unless the judge was on the record completely in charge of it. Do you know what I mean by that? Yes. We have a judge who does that from time to time in the record. Makes it perfectly clear because he doesn't hide behind anything. He just lays it out there. When we look at this record, what do we see? You don't see much. You're right. Now, isn't it generally well known that matters before Judge Timlin generally took quite a lengthy period of time? That would be an understatement. Yes. And all the delay really was attributed to the court's delay in getting out a ruling on the motion to dismiss. Further compounded by the fact that Judge Timlin ultimately took senior status. Yes. And relocated to Santa Barbara. That required the district court to do a little bit of shuffling with the cases. Yes. Which was standard practice in the district court. Yes. Isn't that correct? It certainly happened with Judge Timlin. Now, how do you understand these frequently asked questions that Judge Walters has on the website at the courthouse? Certainly, I was aware of it. He made us aware of it. Do you understand these to be orders and rules? No. I understood a standing order to be orders and rules. And was that standing order distributed to the parties in this case? Actually, it was initially disseminated to Mr. Rash, and he was ordered to disseminate it to me. And he did? Yes, he did. And is there any conflict between those standing orders and these frequently asked questions? There is not. So the frequently asked questions. So in the standing orders, it says if you have a conflict in calendar, you're supposed to notify the deputy courtroom clerk. Yes, among other things. Okay. Now, the judge also thought that the plaintiff had to show as part of the 60B motion that his case was meritorious, correct? Correct. Where does that requirement come from in the Ninth Circuit? My recollection is, Your Honor, he cited to... He cited to more federal rules, I believe. Yes. And he cited to a Third Circuit case. Correct. He doesn't cite to any Ninth Circuit case as far as I could tell. No, he did not. I don't think that's the law in the Ninth Circuit. He cited to a Third Circuit case. Okay. I'll submit it, Your Honor. All right. Just one comment, Your Honor. First of all, the case had not been pending, Your Honor, with all due respect, for four years. It was less than two years, and most of that time, again, was spent in Judge Timlin, unfortunately, not ruling on motions. It was nothing that the defense did. It's four years now. I may be at a disadvantage because I don't know the personalities. I don't know, Judge. It's four years now, Your Honor, but it was only two years at the time when Judge Walter got the case. And I would submit. Thank you. Matter stands submitted.
judges: Farris, Paez, Block